UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

In re:                                                                                  Case No. 808-73746-reg
                                                                                        Chapter   7

        STUART MELTZER,

             Debtor

-----------------------------------------------------------------------X

## *MEMORANDUM DECISION*

      This matter is before the Court pursuant to a motion ("Motion") filed by Andrew Thaler, Esq., ("Trustee") the Chapter 7 trustee in the case of Stuart Meltzer (the "Debtor"), to expunge a proof of claim filed by Dr. Terry Haywoode. Dr. Haywoode's claim is for damages arising from malpractice the Debtor is alleged to have committed during the Debtor's representation of Dr. Haywoode in a personal injury action. The Debtor admits that pre-petition, he committed malpractice in connection with his representation of Dr. Haywoode in a "slip and fall" claim against the City of New York when he failed to file a complaint prior to expiration of the applicable statute of limitations. However, the Trustee and the Debtor, who is represented by his malpractice insurance carrier, assert that Dr. Haywoode is barred from asserting a malpractice claim because her personal injury action was settled with the City of New York for $7,750.00, and the City of New York was ultimately compelled by a court order issued by a New York state court to abide by the settlement, despite the fact that no complaint was filed prior to expiration of the statute of limitations. According to the Trustee and the Debtor, because the amount of the settlement was appropriate based on her injuries, and she signed a general release in favor of the City of New York, she has no right to maintain a malpractice claim against the Debtor and therefore has no claim in this case. For the reasons set forth below, the motion is denied.

Due to the particular set of facts presented in this case, Dr. Haywoode's settlement of the underlying personal injury action and her execution of the general release does not bar Dr. Haywoode's malpractice claim.  Under New York law, a client's right to maintain a malpractice action is restricted if the underlying action to which the alleged malpractice is attributable is settled.  In those instances, a client may only seek recovery for malpractice if the client was compelled to accept the settlement due to mistakes of counsel.  In our case, the Debtor's malpractice left Dr. Haywoode with no right to pursue her claim against the City of New York.  Having lost the right to pursue her claim for damages, the only remaining avenue for Dr. Haywoode was to seek to enforce the settlement with the City of New York. The $7,750.00 payment only served to reduce or mitigate the damages caused by the Debtor's malpractice.  Seeking to enforce the settlement was not equivalent to ratifying the settlement, but represented Dr. Haywoode's only chance to recover from the City of New York.  Therefore, the settlement of the underlying action and the execution of the general release do not serve to bar Dr. Haywoode's malpractice claim. However, the Court in ruling that Dr. Haywoode does in fact have a claim is not reaching any conclusion that this claim will be found to be of any value.  Dr. Haywoode must establish at a future evidentiary hearing that, if a trial on the underlying personal injury action were held, she would have been entitled to recover more than $7,750.00 from the City of New York for her injuries.   Otherwise, her claim against the Debtor will be valued at zero.

## *Procedural History*

On July 14, 2008, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  On October 20, 2008, the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code, and is an asset case.  Thereafter, the Trustee was appointed as

trustee of the Debtor's case. On February 19, 2009, Dr. Haywoode filed proof of claim no. 18 in the amount of $150,000.00 based on an alleged malpractice claim against the Debtor. On April 30, 2009, the Trustee filed the Motion, seeking to expunge the claim pursuant to Bankruptcy Code § 502(b)(1). According to the Trustee, Dr. Haywoode's claim should be expunged because the claim was not listed in the Debtor's schedules and because there was no determination by any court that the Debtor committed malpractice which would give rise to the claim. On May 29, 2009, Dr. Haywoode filed opposition to the Motion, asserting that she has a valid malpractice claim against the Debtor. A hearing on the Motion was held on February 22, 2010. At the hearing, the Court granted the Motion, and vacated the automatic stay to permit Dr. Haywoode to pursue her claim against the Debtor in State Court, with recovery limited to the applicable limits of the Debtor's malpractice insurance. The Court entered an order memorializing the decision on March 1, 2010, which order was vacated by the Court on March 23, 2010. The Court directed that a proposed order granting the Motion be settled upon Dr. Haywoode to give her an opportunity to review the proposed order prior to its entry, and on April 5, 2010, Dr. Haywoode filed opposition to entry of the proposed order granting the Motion, indicating that to the extent the Debtor's malpractice insurance carrier disclaims any obligation to pay the malpractice claim, Dr. Haywoode wished to preserve her right to assert a claim against the Debtor in the bankruptcy case. Dr. Haywoode requested that this Court fix the amount of the claim, regardless of whether the claim is covered by the Debtor's malpractice insurance policy, or the claim is paid out in the Debtor's bankruptcy case.

On April 8, 2010, the Court entered an order scheduling an evidentiary hearing to determine the merits of the Trustee's objection to Dr. Haywoode's claim. On May 4, 2010, the Trustee sought leave of the Court to file a motion for summary judgment on the issue of liability.

On September 20, 2010, Dr. Haywoode filed a letter with the Court seeking allowance of her claim as a matter of law ("Summary Judgment Motion"). The Debtor opposed the Summary Judgment Motion, and on January 4, 2011, Dr. Haywoode filed an amended proof of claim, seeking $2 million based on the Debtor's alleged malpractice, plus exemplary damages, for a total demand of $6 million.

On January 5, 2011, a hearing was held on the Summary Judgment Motion, which was denied on the record. An order was entered on January 11, 2011 denying the Summary Judgment Motion, and setting the matter down for an evidentiary hearing "to determine the existence and fix the amount, if any, of Dr. Terry Haywoode's malpractice claim against the Debtor." ("Summary Judgment Order"). On February 7, 2011, Dr. Haywoode filed a motion with the District Court for the Eastern District of New York, seeking leave to appeal from the Summary Judgment Order and in the alternative, to withdraw the reference from the Bankruptcy Court. By Memorandum Decision and Order dated May 24, 2011, the District Court denied Dr. Haywoode's motion in its entirety. The Court held evidentiary hearings on May 26, 2011, July 7, 2011 and August 30, 2011 solely to determine whether the Debtor committed malpractice, and if so, whether the settlement of the underlying personal injury action and Dr. Haywoode's subsequent attempts to enforce the settlement agreement bar Dr. Haywoode from recovering on her malpractice claim. The Trustee, the Debtor and Dr. Haywoode filed post trial submissions.[1] Thereafter, the matter was marked submitted.

*Facts*

---

[1] Although DR. Haywoode's post-trial brief was filed two days after the deadline imposed by the Court, the Court shall not disregard the late filing, as urged by the Debtor and the Trustee, and there is no need for the Trustee or the Debtor to file supplemental papers in response. The Court does not find that Dr. Haywoode gained an unfair advantage over the Debtor and the Trustee by having an opportunity to review the submissions of the Debtor and the Trustee prior to filing her brief. In fact, Dr. Haywoode's brief did not raise any issues which were substantially different from the issues she raised in any of her prior submissions.

On October 21, 2006, Dr. Haywoode fell on a public sidewalk in New York City and was injured. The severity and extent of her injuries are in great dispute, but it appears she sustained injuries to her face and required stitches. Sometime in late 2006 or early 2007, Dr. Haywoode retained the Debtor, who is a licensed attorney, to represent her on the advice of her son, Arthur Haywoode. Arthur Haywoode was a law student at the time he made this recommendation, and had been employed by the Debtor as a paralegal, performing work on a *per diem* basis. The Debtor never entered into a written retainer agreement with Dr. Haywoode. July 7, 2011 Trial Transcript ("Tr. Day 2") at 125-126. According to the Debtor's testimony, he only agreed to represent Dr. Haywoode as a favor to Arthur Haywoode. August 30, 2011 Trial Transcript ("Tr. Day 3") at 66. Arthur Haywoode testified that he shared with Dr. Haywoode all of the material conversations he had with the Debtor regarding Dr. Haywoode's claim. May 26, 2011 Trial Transcript ("Tr. Day 1") at 93. The Debtor confirmed that Arthur Haywoode was "intimately involved" in the case, and Arthur Haywoode had complete access to Dr. Haywoode's legal file maintained at the Debtor's law office. Tr. Day 3 at 64.

Arthur Haywoode helped prepare a notice of claim ("Notice of Claim") on behalf of Dr. Haywoode dated January 2, 2007, which is a prerequisite to bringing a suit against the City of New York. Tr. Day 1 at 55, 68 and 70. The Notice of Claim was timely filed with the City of New York and with the Comptroller's Office of the City of New York. The Notice of Claim bears the Debtor's signature and lists the Debtor as counsel to Dr. Haywoode. Exhibit ("Ex") 11.

The Debtor testified that he first spoke with Dr. Haywoode in January or February, 2007, shortly after he agreed to take the case and after the Notice of Claim was filed. The Debtor testified he advised Dr. Haywoode that the lawsuit could be worth as little as $2,500.00 or as much as $25,000.00, depending upon the severity of the injuries she sustained. Tr. Day 3 at 63.

According to the Debtor, the higher number was based on his understanding that Dr. Haywoode may have broken her nose. Tr. Day 3 at 61. However, after the Debtor agreed to represent Dr. Haywoode, he reviewed the medical records generated as a result of Dr. Haywoode's visit to the emergency room after the accident, and discovered that while Dr. Haywoode did receive stitches for her injury, she did not suffer a broken nose. Tr. Day 3 at 84. According to the Debtor, due to the minimal injuries suffered by Dr. Haywoode, the case was a "nuisance value case," which opinion he conveyed to Dr. Haywoode and Arthur Haywoode. Tr. Day 3 at 64.

In September 2007, the Debtor first attempted to settle the matter with the City of New York using the "Cybersettle" system. Under this system, each litigant submits settlement offers with Cybersettle's online settlement system, using a confidential settlement access code. The double-blind bid system compares the range of settlement amounts of each litigant in a series of rounds, and is a neutral third party to the process. If the settlement offers between the parties coincide, Cybersettle advises each party that a settlement has been reached. Ex. D. The Debtor first entered three settlement amounts into the Cybersettle system: approximately $22,000.00, approximately $16,000.00 - $18,000.00, and a lower amount of $12,000.00. According to Arthur Haywoode's testimony, he may have seen the dollar amounts of the first three settlement offers entered into the Cybersettle system on behalf of Dr. Haywoode. Tr. Day 1 at 53. Cybersettle responded that there was no settlement based on the range of numbers submitted by the Debtor and the City of New York. Tr. Day 3 at 61. After receipt of this information from Cybersettle, the Debtor testified that he conveyed his opinion to Dr. Haywoode that the case had a settlement value of approximately $10,000.00. Tr. Day 3 at 63.

On January 15, 2008, Cybersettle advised the Debtor that the City of New York had entered three new settlement offers in the Cybersettle system. Tr. Day 3 at 147 – 149; Ex. D.

The Debtor received a letter dated January 15, 2008 from Cybersettle advising that the Debtor had until February 14, 2008 to respond to the settlement offers proposed by the City of New York.  January 19, 2008 was the last date to file a complaint against the City of New York.  A summons and complaint had been prepared by the Debtor's office prior to the expiration of the applicable statute of limitations, but due to law office failure, the summons and complaint was not filed prior to January 19, 2008.  Tr. Day 3 at 117.

On February 12, 2008, the Debtor received an email from Arthur Haywoode inquiring whether a lawsuit had been filed in Dr. Haywoode's case, and pointing out that the statute of limitations to commence an action may have run.  Ex. 20 at A-135.  The Debtor responded by email later that morning, advising Arthur Haywoode that he would check.  Ex. 20 at A-136.  Then, the Debtor entered three new proposed settlement figures into the Cybersettle system.  Tr. Day 3 at 98.  Later that day, the Debtor received and forwarded to Arthur Haywoode an e-mail from Cybersettle, stating "Cybersettle is pleased to confirm settlement in the amount of $7,750.00 for your client, Terry L. Haywoode."  Ex. 20 at A-138.  It is undisputed that by the time that the settlement was reached through Cybersettle on February 12, 2008, the statute of limitations on Dr. Haywoode's claim against the City of New York had expired and the Debtor had not filed a complaint prior to such date.  Arthur Haywoode forwarded the settlement confirmation e-mail to Dr. Haywoode the same day he received it from the Debtor. Tr. Day 3 at 11.  On February 25, 2008, Dr. Haywoode signed a general release, agreeing to settle her claims against the City of New York for $7,750.00.  Ex. A. The general release provided that Dr. Haywoode agreed to release the City of New York, and its successors and assigns from all actions related to the injuries she sustained on October 21, 2006.  The general release did not provide any release between the Debtor and Dr. Haywoode.  Dr. Haywoode had her signature

notarized, and mailed the general release back to the Debtor's office.  Tr. Day 2 at 131-132.  There is no evidence that the Debtor counseled Dr. Haywoode regarding the legal effect, if any, of execution of the settlement and general release on any claim Dr. Haywoode may have against the Debtor.

On March 14, 2008, the Comptroller for the City of New York issued a letter to the Debtor attempting to reject the settlement reached in the Cybersettle system due to the Debtor's failure to file a timely complaint.  Ex. 16.[2]  The next documented exchange between the Debtor and either Dr. Haywoode or Arthur Haywoode consisted of an e-mail dated May 1, 2008.  Arthur Haywoode e-mailed the Debtor indicating that Dr. Haywoode had some questions regarding the name of the Debtor's malpractice insurance carrier, whether the malpractice insurance carrier was aware of the "Cybersettle offer," and what the time frame was for obtaining a response from the insurance carrier.  Ex. 20 at A-139.  On May 1, 2008, the Debtor responded that his malpractice insurance carrier had a large deductible and the Debtor would have to pay some amount out of pocket to cover any malpractice award.  The Debtor also replied "let's see what my carrier is willing to put on the case and whether I can pay your mom out little by little."  Ex. 20 at A-140.  On May 6, 2008, the Debtor spoke to Dr. Haywoode, and he apologized for his failure to file a timely complaint.  The Debtor and Dr. Haywoode also had further discussions about the Debtor's malpractice insurance.

By e-mail dated May 6, 2008, the Debtor asked Arthur Haywoode to assist him with preparing a motion to enforce the settlement with the City of New York.  Based on the contents of these e-mails, it is clear that as of May 6, 2008, the Debtor and Dr. Haywoode both agreed on

---

[2] Apparently, the City of New York accepted the settlement brokered in the Cybersettle system without verifying whether a summons and complaint had been timely filed on behalf of Dr. Haywoode.

a course of conduct. A claim with the Debtor's malpractice insurance carrier would be pursued, and the Debtor would seek to enforce the settlement with the City of New York. Arthur Haywoode responded on May 7, 2008 that he would be willing to conduct some research regarding whether there was a legal basis to argue that participation in the Cybersettle system tolled the statute of limitations on the cause of action. Ex. 20 at A-145.

On May 14, 2008, Arthur Haywoode sent an e-mail to the Debtor, claiming that he had "new information" that the settlement of the personal injury action is not an admission or a limitation on the value of the underlying case. Arthur Haywoode also related that he "spoke to some other attorneys, and they valued the case at up to $60,000, pre-trial." Ex. 20 at A-147. The May 14, 2008 e-mail put the Debtor on notice that Dr. Haywoode would be seeking to recover much more than $7,750.00 from the Debtor's malpractice insurance policy, and that her claim against the malpractice insurance policy was not contingent upon whether the settlement with the City of New York was not upheld. The Debtor responded by e-mail dated May 14, 2008, accusing Dr. Haywoode of seeking a "windfall" after signing a release in the personal injury action. The Debtor also argued that once the release had been executed, Dr. Haywoode's recovery against the Debtor's malpractice insurance carrier was limited to the settlement amount of $7,750.00. Ex. 20 at A-150. In Arthur Haywoode's response later that day, he commented that Dr. Haywoode only signed the release "under duress, because she believed she had no choice. [Arthur Haywoode's father] gave me the opinion that the case could go into the six figures." By e-mail dated May 21, 2008, the Debtor reiterated that he was pursuing enforcement of the settlement achieved under the Cybersettle system, that Dr. Haywoode had agreed that the value of her case was limited to $7,750.00, and releases to this effect had been executed. The

Debtor also stated his position that Dr. Haywood only had the right to pursue a malpractice claim if the settlement was not upheld. Ex. 20 at A-157.

The Debtor was successful in enforcing the settlement, and on February 12, 2009, the Debtor forwarded a check in the amount of $4,843.51to Dr. Haywoode, which represented her share of the settlement amount after deducting the Debtor's claimed fee. Dr. Haywoode received the check and deposited it into her bank account.

## *Discussion*

The Bankruptcy Code provides that the court "shall allow" a claim except to the extent that a claim falls within one of the exceptions enumerated in Bankruptcy Code § 502(b). The applicable exception cited by the Trustee in support of the Motion is § 502(b)(1), which provides for disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The Trustee as the objecting party has the burden of presenting evidence sufficient to overcome the *prima facie* validity of a claim. *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. BAP), *aff'd*, 242 F.3d 367 (2d Cir. 2000). According to the Trustee, Dr. Haywoode's claim must be expunged because she does not have an enforceable malpractice claim against the Debtor. In support of his contentions, the Trustee recites that no judgment has been entered against the Debtor for the alleged malpractice, and Dr. Haywoode's malpractice claim is legally deficient under applicable New York law. Because there has been no judgment entered in favor of Dr. Haywoode on the malpractice claim, the Trustee sufficiently rebutted the *prima facie* validity of Dr. Haywoode's claim. The burden

is now upon Dr. Haywoode to establish that she has a right to payment for the malpractice claim under applicable law.

In order to sustain a malpractice claim, the client must allege and prove: "(1) that the attorney 'failed to exercise ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession'; and (2) that the attorney's breach of the duty proximately caused the [client] actual and ascertainable damages." *Dempster v. Liotti,* 86 A.D.3d 169, 176, 924 N.Y.S.2d 484, 489 (N.Y. App. Div. 2011) (quoting *Leder v. Spiegel,* 9 N.Y.3d 836, 837, 840 N.Y.S.2d 888, 872 N.E.2d 1194, (N.Y. 2007), *cert. denied sub nom. Spiegel v. Rowland,* 552 U.S. 1257, 128 S.Ct. 1696, 170 L.Ed.2d 354 (2008)). Causation, which is an element of a malpractice claim, requires a showing by the party alleging malpractice "that he or she would have prevailed in the underlying action. . . . but for the lawyer's negligence." *Pistilli Constr. & Dev. Corp. v. Epstein, Rayhill & Frankini,* 84 A.D.3d 913, 921 N.Y.S.2d 887 (N.Y. App. Div. 2011) (quoting *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer,* 8 N.Y. 3d 438, 442, 835 N.Y.S.2d 534, 867 N.E.2d 385  (N.Y. 2007)).

Dr. Haywoode alleges, and the Debtor admits, that the Debtor's failure to file a summons and complaint on behalf of Dr. Haywoode prior to expiration of the applicable statute of limitations constituted malpractice. An attorney's admitted failure to commence an action within the applicable time frame provided by statute constitutes negligence as a matter of law. *Bergin v. Grace,* 39 A.D.3d 1017, 1018, 833 N.Y.S.2d 729, 730 (N.Y. App. Div. 2007) (citing *A.H. Harris & Sons, Inc. v. Burke, Cavalier, Lindy and Engel P.C.,* 202 A.D.2d 929, 930, 610 N.Y.S.2d 888, 889 (N.Y. App. Div. 1994) (other citations omitted)).This is not a case where the client decided to accept a settlement in lieu of facing the risks of trial. Because of the Debtor's

malpractice, Dr. Haywoode was left with no choice but to accept the settlement, having lost the right to maintain any action for damages against the City of New York.

Because the underlying action was settled, and the settlement was upheld, the effect of the settlement on the malpractice claim must be examined. Under New York law, where the underlying action has been terminated by settlement rather than by dismissal or adverse judgment, a claim for legal malpractice survives only if the court finds that the settlement was compelled because of the mistakes of counsel. *Cohen v. Lipsig,* 92 A.D.2d 536, 459 N.Y.S.2d 98, 99 (N.Y. App. Div. 1983) (citing *Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine,* 45 N.Y.2d 730, 732, 408 N.Y.S.2d 475, 380 N.E.2d 302 (N.Y. 1978), and *Becker v. Julien, Blitz & Schlesinger,* 95 Misc.2d 64, 66-67, 406 N.Y.S.2d 412 (N.Y. Sup. Ct.1977), *modified on other grounds,* 66 A.D.2d 674, 411 N.Y.S.2d 17 (N.Y. App. Div. 1978)).

As stated in *Becker v. Julien, Blitz & Schlesinger, P.C.:*

> Where the termination (of the underlying action) is by settlement rather than by a dismissal or adverse judgment, malpractice by the attorney is more difficult to establish, but a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse. Thus, the court finds itself in agreement with the concurring opinion by Mr. Justice Suozzi in the *Kerson* case, *supra,* that the cause of action for legal malpractice must stand or fall on its own merits, with no automatic waiver of a plaintiff's right to sue for malpractice merely because plaintiff had voluntarily agreed to enter into a stipulation of settlement.

95 Misc.2d at 66, 406 N.Y.S.2d at 414 (citing *Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine,* 45 N.Y.2d at 732, 408 N.Y.S.2d 475, 380 N.E.2d . 302).

The Debtor and the Trustee urge the Court to find that the settlement and release bar Dr. Haywoode from maintaining a malpractice action against the Debtor. According to the Debtor

and the Trustee, Dr. Haywoode accepted the settlement and found it to be reasonable, signed the general release, and made subsequent efforts to enforce the settlement. Based on Dr. Haywoode's actions, including her ratification of the settlement when she executed the settlement and release, she forfeited her right to maintain the malpractice action. In contrast, Dr. Haywoode argues that she was compelled to accept the settlement due to the Debtor's malpractice. Because Dr. Haywoode had no other choice but to accept the settlement, she did not waive her right to bring a malpractice action against the Debtor, and the settlement of the personal injury action does not restrict her right to assert a claim for malpractice.

In this case, neither party has accurately characterized the effect the settlement has on Dr. Haywoode's malpractice claim. The City of New York offered to settle Dr. Haywoode's claim for $7,750.00. This offer appears to have been made solely based on the City of New York's view of the value of the claim, in that it was made before the City became aware that a complaint was not filed prior to expiration of the statute of limitations. Once the Debtor failed to file a timely complaint, the personal injury "claim" was effectively worthless and the City of New York revoked the settlement. The Debtor's failure to file a timely complaint precluded Dr. Haywoode from having her day in court. As a result of the Debtor's negligence, the most that Dr. Haywoode could ever collect from the City of New York was $7,750.00. Only an intervening order of a State Court judge preserved the deal. The $7,750.00 settlement, while providing some evidence of the value of the claim, only mitigated the damages caused by the Debtor's negligence. The Debtor recognized that the settlement served to mitigate any damages he caused because he agreed to be responsible for up to $7,750.00 in the event the City of New York reneged. It was in the best interests of Dr. Haywoode as well as the Debtor to seek enforcement of the City's agreement.

Certainly, Dr. Haywoode wanted to bind the City of New York to the settlement, which is why she signed the general release and sought to compel the City of New York to honor its settlement. However, Dr. Haywoode's acts do not absolve the Debtor of wrongdoing. While the Debtor may have believed that Dr. Haywoode would only seek recovery from the Debtor's malpractice insurance carrier if the settlement with the City of New York was not enforced, nothing in the record suggests the Debtor requested a release from Dr. Haywoode or in any way committed her to this course of conduct. In fact Dr. Haywoode ultimately decided not treat this as an "either/or" proposition.

The case of *Vann v. Home Ins. Co.,* 288 A.D.2d 60, 733 N.Y.S.2d 13 (N.Y. App. Div. 2001), upon which the Debtor and the Trustee rely for their argument that Dr. Haywoode's ratification of the settlement bars her from seeking recovery on a malpractice claim, does not provide such support. It merely stands for the proposition that a client may not wait over three years to commence a malpractice action based solely on the theory that the attorney lacked authority to enter into a settlement, where the client was aware of the settlement almost immediately and failed to voice any meaningful objection in a more timely manner. Unlike the *Vann* case, the Debtor in this case is accused of more than entering into a settlement without the client's authorization. The Debtor admits to failing to file a timely complaint, which effectively precluded Dr. Haywoode from maintaining an action against the City of New York. Dr. Haywoode was aware that the Debtor had committed this error at the time she signed the general release. Her failure to voice any meaningful objection to the settlement amount, to the extent she had objections, was immaterial and did not ratify the settlement because voiding the settlement would only have placed her in a worse position. Dr. Haywoode acknowledged in her testimony that preserving the settlement was of critical importance, given the fact that the Debtor never

filed a timely complaint on her behalf. This is why she signed the release, and authorized the Debtor to file a proceeding to compel the City of New York to honor the settlement.

Having found that the Debtor was negligent in his representation of Dr. Haywoode, and that the settlement of the underlying personal injury action does not bar this claim, this only means that Dr. Haywoode has established as a matter of law that she has a cause of action and therefore a claim. In order to determine the amount of the claim, Dr. Haywoode must establish at an evidentiary hearing that she would have recovered more than the settlement amount of $7,750.00 if the personal injury action went to trial, and that the judgment could have been collected from the City of New York. *Titsworth v. Mondo*, 95 Misc.2d 233, 242, 407 N.Y.S.2d 793, 798 (N.Y. Sup. 1978). Given that the City of New York valued the action at $7,750.00 and the Debtor considered the action to have a nuisance value only, Dr. Haywoode faces a difficult challenge ahead. Dr. Haywoode will also have to establish that all applicable notice requirements have been met, including the requirement that the City of New York received prior written notice of the defects or conditions in the sidewalk. N.Y. City Admin. Code § 7-201(c)(2). *See Mendelsohn v. City of New York*, 01 Civ. 5932 (GEL), 2003 WL 22510392 (S.D.N.Y. 2003). However, she is entitled to a hearing to determine whether she could have obtained a greater recovery at trial.

### *Conclusion*

For the reasons stated above, the Court finds that Dr. Haywoode has a claim for malpractice against the Debtor, with the dollar amount of the claim to be fixed. The Court shall hold a hearing on June 27, 2012 at 9:30 a.m. to fix a date for an evidentiary hearing to determine whether, at trial, Dr. Haywoode could have successfully recovered in excess of $7,750.00 from

the City of New York for her injuries.   In the event the malpractice claim is valued at any amount less than $7,750.00, Dr. Haywoode's claim will be valued at zero.

Dated: Central Islip, New York
      May  18, 2012                               By:  ***/s/ Robert E. Grossman***
                                                       Robert E. Grossman
                                                       United States Bankruptcy Judge